UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIACOM INTERNATIONAL INC., <br><br> PLAINTIFF, <br><br> V. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> DEFENDANTS. | CASE NO.: 1:20-CV-07418 <br><br> JUDGE HARRY D. LEINENWEBER <br><br> MAGISTRATE JUDGE GABRIEL A. FUENTES |

**MEMORANDUM IN OPPOSITION TO MOVANT'S MOTION FOR AN ORDER GRANTING IT DAMAGES AND LEGAL FEES PURSUANT TO FRCP 65(c) AND THE LANHAM ACT 15 U.S.C §1117(a)**

Plaintiff, Viacom International, Inc. ("Viacom" or "Plaintiff") submits this Memorandum in Opposition to the motion of Kids Bedding 4 Less, LLC d/b/a kreativekidzbedding.com s/h/a KreativeKidsBedding ("Movant") which seeks an order for damages and fees. The motion is so egregiously factually and legally deficient, being almost completely devoid of any relevant case law and supporting documentation to support Movant's position, that it unfairly prejudices Plaintiff, as Plaintiff must now attempt to respond and mount its defense without sufficient or adequate information to do so. For this reason alone, Movant's motion should be summarily dismissed with prejudice in its entirety. Furthermore, Movant has failed to establish that it is entitled to damages under FRCP 65(c) and has similarly failed to demonstrate that it is entitled to fees pursuant to 15 U.S.C §1117(a).

## ARGUMENT

I. **MOVANT HAS FAILED TO ESTABLISH THAT IT IS ENTITLED TO LEGAL FEES UNDER 15 U.S.C. § 1117(A)**

Pursuant to 15 U. S. C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorneys fees to the prevailing party." Insofar as § 1117(a) is applied, "the standard for finding a case exceptional

1

befits its definition – 'uncommon,' 'rare,' or 'not ordinary.'" *Intellect Wireless, Inc. v. Sharp Corp.*. 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014). An "exceptional" case is thus "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The district court is afforded broad discretion in determining whether a case is "exceptional." *Id.* It is a case-by-case determination "considering the totality of the circumstances." *Id.* District courts are uniquely suited to determine whether the case "stands out from the others." *Id.* A Lanham Act-based award of attorneys' fees to a prevailing defendant is exceptionally rare, and "requires an *unambiguous showing of extraordinary misconduct* on the part of the plaintiff." *Sunmark, Inc. v. Ocean Spray Cranberries, Inc*. No. 93 C 6174, 1996 WL 392154, at 3 (N.D. Ill. July 11, 1996) (emphasis supplied). Additionally, a party requesting fees under the Lanham Act bears the burden of proving, by a preponderance of the evidence, that the case is "exceptional" sufficient to warrant an award of attorney's fees. *Octane,* 572 U.S. at 557-58.

      A.      **Movant has Failed to Establish that it is a "Prevailing Party"**

As a threshold matter, under the Lanham Act, only a "prevailing party" may recover attorney's fees. 15 U.S.C. § 1117(a). At no point in Movant's Memorandum does it even attempt to address, argue, establish, or demonstrate that it meets the standard of being considered a "prevailing party." Rather, Movant argues that "Plaintiff should be directed to pay the legal fees incurred by Movant in defense of this action pursuant to 15 U. S. C. §1117(a) as it is an 'exceptional case' pursuant to the United States Supreme Court's decision in *Octane*, 572 U.S. 545 (2014)."

The question of when a litigant is the prevailing party is addressed in *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Res.,* 532 U.S. 598 (2001) and *CRST Van Expedited, Inc.* v. *EEOC.* 136 S. Ct. 1642 (2016). *Buckhannon* held that 'the 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," and that the "change must be marked

2

by 'judicial imprimatur." *CRST,* 136 S. Ct. at 1646. As examples of a material alteration, the *Buckhannon* court cited enforceable judgments on the merits and court-ordered consent decrees. *Id.* at 604. *CRST* expanded on the *Buckhannon* decision, and courts have continued to consistently cite *Buckhannon* and apply the material alteration test to non-merit rulings to determine the prevailing party inquiry. *See, e.g.. Rani ere* v. *Microsoft Corp.,* 887 F.3d 1298-1306-07 (Fed. Cir. 2018).

The voluntary dismissal of Movant without prejudice does not meet the material alteration standard of *Buckhannon* and *CRST* because it did not create any finality in the suit and did not create a "material alteration" in the legal relationship between the parties. Plaintiff has the right to refile in the suit and seek the very same relief for the same conduct against the same party. It remains to be seen who will prevail on the underlying trademark and copyright infringement claims. For that reason, Movant is not the prevailing party and cannot recover fees. *Citizens for a Better Env. v. Steel Co.*, 230 F.3d 923 (7th Cir. 2000).

### B. Movant has Failed to Establish that this is an "Exceptional" Case

Even if Movant is the prevailing party, it has not met the heavy burden of proving that this is an "exceptional case." Applying *Octane*'s "totality of the circumstances" analysis, and the requirement that a party requesting fees under the Lanham Act bears the burden of proving, by a preponderance of the evidence, that the case is "exceptional" sufficient to warrant an award of attorney's fees, Movant's Motion falls painfully short of establishing that this is an "exceptional" case. *Octane*, 572 U.S. 545 (2014).

This Court has historically had a high standard for what is considered "exceptional." *See, e.g., Central Mfg., Inc. v. Brett*, 492 F.3d 876, 884 (7th Cir. 2007) (discussing bitter discovery disputes and the paucity of evidence produced in support of the plaintiff's claims); *S. Indus., Inc.,* 249 F.3d at 627 (noting that the district court awarded fees because the plaintiff asserted claims that were meritless and employed dilatory tactics during four years of litigation); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.,* 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005) (finding the case "exceptional" because, in response to a motion for summary judgment, the plaintiff failed to produce a shred of evidence to support a necessary element); *Top Tobacco,*

3

*L.P. v. N. Atl. Operating Co.,* No. 06 C 950, 2007 U.S. Dist. LEXIS 28543, 2007 WL 1149220, at **2-5 (N.D. Ill. Apr. 17, 2007) (awarding fees following summary judgment where the plaintiff brought weak claims, asserted contradictory positions to the court and to the PTO, and gave "absurd" deposition testimony); *S Indus., Inc. v. Ecolab, Inc.,* No. 96 C 4140, 1999 U.S. Dist. LEXIS 3484, 1999 WL 162785, at *8 (observing that the plaintiff's claims were without merit, that little evidence was produced in support at summary judgment, and that the plaintiff had a pattern of obstruction during discovery). It is noteworthy that the cases cited all arose following a motion for summary judgment and involve "scorched earth" litigation tactics that needlessly increased the costs of litigation over many years. Not only does Plaintiff not fall into any of these categories, but rather Plaintiff attempted to bring this matter to resolution promptly so as to avoid any further or drawn-out litigation. The instant motion for fees does not come after years of litigation, or a successful motion for summary judgment. Rather, the present case lasted, from the day the Movant's account was frozen until the day the Movant's account was released, a total of 45 days. Further mitigating against an award of fees is the fact that the parties did not go through the discovery process, thereby avoiding the costly activities that typically prompt courts to award fees; and, Plaintiff acted promptly and reasonably in dismissing Movant from the present lawsuit. *See infra.*

However, even if a Court determines that a case is exceptional, it must still take an additional step by determining whether to award attorney's fees, as not all exceptional cases require such an award. *Intellect Wireless*, 45 F Supp.3d at 853. Significantly, the Second Circuit (the Circuit which Movant has urged this Court to adopt) has cautioned that, "a court should proceed cautiously before imposing fees on a trademark owner, lest it present trademark owners with the Hobson's Choice of either defending their marks and risking punitive attorney's fee awards or turning a blind eye to infringement and dilution and risking the loss of their rights." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.,* 2018 U.S. Dist. LEXIS 3035 (S.D.N.Y., Jan. 8, 2018). The Court went on to state that "given the size and nature of [Plaintiff's] business, it is no surprise that the company is involved in a lot of trademark litigation. Notably, however, [Plaintiff]

4

has prevailed in much of its litigation…" and even if there are a few examples of arguable overreach, this would not be enough to conclude that Plaintiff has engaged in litigation abuse. *Id.* The Plaintiff in this case is similarly situated, and, as a matter of fairness, should not be penalized for actions taken in an effort to protect and enforce its federally registered trademarks.

### C. Movant has Failed to Establish that Plaintiff Acted in Bad Faith

Movant claims that it is entitled to fees because Plaintiff acted in bad faith by naming Movant as a defendant in this action. In support of its position, it relies on the holding, yet again, of one sole block quote from one single case – *Coyne-Delany Co. v. Capital Development Board*, 717 F.2d 385 (7th Cir. 1983), which stated, "[i]n the absence of statute, an award of attorney's fees is proper only where the losing party has been guilty of bad faith, as by bringing a frivolous suit--frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win." *Coyne-Delany*, 717 F.2d at 390.

In this case, a discussion of the *Coyne* bad faith standard is not necessary, as it is not a situation that is "in the absence of statute." Moreover, blanketed false statements with absolutely no support or documentary evidence and a desire to collect against Plaintiff does not alone satisfy or prove that Plaintiff acted in "bad faith."

### D. Movant has Failed to Establish that Plaintiff Acted Unreasonably

Movant's alleged "proof" that the case is exceptional basically consists of two allegations: that Plaintiff's claims were frivolous and harassing in nature, and that Plaintiff voluntarily dismissed Movant too swiftly. *Octane* held that district courts should consider the totality of circumstances and various factors, including frivolousness, motivation, objective, unreasonableness and considerations of competence and deterrence when determining whether a case is exceptional. *Octane*, 572 U.S. 545 (2014). Plaintiff asserts that Movant's allegations are false and uninformed, and that, at all times, Plaintiff acted reasonably and fairly.

### i. *Plaintiff was Reasonable in its Pre-Suit Investigations and Due Diligence*

Plaintiff is the owner of the Teenage Mutant Ninja Turtles ("TMNT") trademarks and copyrights, which are registered with the USPTO and the U.S. Copyright Office. Plaintiff suffers significant losses and damages from online counterfeiters each year. In an attempt to protect its intellectual property, Plaintiff brought this infringement action against approximately two hundred defendants, of which Movant was one.

Movant's Amazon store "kreativekidsbedding" was identified by Plaintiff's investigation team as retailing in counterfeit and/or unlicensed products due to a number of factors. See the Declaration of Paul Varley at ¶ 6 (the "Varley Declaration"). First, the design on the bedding does not match any officially licensed bedding that Plaintiff was able to identify. *Id*. Second, the Nickelodeon branding does not appear on the bedding although TMNT is a Nickelodeon product, and licensed products would include this branding. *Id*. Third, Movant used digitally augmented images of the TMNT product and various other branded products in its store. *Id*. Fourth, Movant offered a high volume of products for sale. *Id*. Fifth, Plaintiff did not conduct business with this store, nor had they granted this store a license to sell its products or use its TMNT trademarks and copyrights. *Id*. Lastly, when a product is officially licensed, it is generally widely available, and this was not the case for the TMNT product offered for sale by Movant. *Id.* at ¶ 7. In Plaintiff's experience, all of these factors taken together are strong indicators of counterfeit activity. Because of this, Plaintiff was reasonable in believing that Movant was infringing its TMNT intellectual property and selling counterfeit products.

Additionally, Plaintiff was reasonable in its determination that Movant was a Chinese entity, even if later its good faith determination proved to be incorrect. The nature of online counterfeiting, and the evasive tactics of foreign counterfeiters, make it incredibly difficult to determine with absolute certainty where a defendant is located. Because of that, there will be times when Plaintiff gets it wrong, but that alone should not be enough to hold that they conducted themselves unreasonably.

Infringers often go to great lengths to conceal their identities by using multiple fictitious names and

6

addresses, and/or by not including contact information on their stores or websites. *Id.* at ¶ 8. Movant fell into this category, by not including any contact information, location, or associated business name, on its Amazon storefront at the time of Plaintiff's investigation; a time when Amazon did not require sellers to publish their location on their storefront. *Id.* at ¶¶ 8-9. There was nothing to indicate that the kreativekidsbedding Amazon store was associated with a business named Kids Bedding 4 Less. *Id.* at ¶ 16. Also, since Amazon uses fulfillment centers to distribute orders, purchasing the product would not have yielded any information with regard to Movant's location. *Id.*

Additional research and investigation were undertaken to determine Movant's location. *Id*. This investigation revealed that there were no business records for a US based company called "Kreative Kids Bedding;" while there were a number of "Kreative Kids" companies registered, they were all related to childcare facilities. *Id.* at ¶ 14. The investigators came across KreativeKidzBedding.com, which Movant has asserted is its "proprietary" website, however, no contact information was listed on the website; there was no indication it was associated with the kreativekidsbedding Amazon store; no TMNT products were listed; and, it used a Canadian based privacy registration service seemingly to protect its owner from identification through online "lookup services." *Id*. What investigators did discover was that multiple Chinese entities were using the "Kreative Kids Bedding" moniker; specifically, three Chinese websites were identified as likely being associated with the kreativekidsbedding Amazon storefront. *Id.* at ¶¶ 11-13. As Plaintiff had already identified similar indicia between the Amazon store and other foreign-based counterfeiters, the discovery of Chinese websites using the same terminology and marketing as the Amazon store, made it more likely than not that they were connected. In all of Plaintiff's research and investigations, there was no evidence whatsoever that the Amazon store kreativekidsbedding was based in the U.S.

  ii. <u>*Plaintiff was Reasonable throughout the Pendency of Litigation*</u>

During the pendency of litigation, Plaintiff acted reasonably, professionally, and promptly. After Movant's counsel reached out to Plaintiff on January 21, 2021, Plaintiff responded immediately with the

7

intention of discussing resolution of the matter. Declaration of Alison K. Carter ("Carter Declaration") at ¶ 11. In fact, Plaintiff emailed Movant a number of times expressing its desire to discuss resolution which fell on deaf ears. *Id.* at ¶¶ 11, 13, 14. Once Movant finally provided documents to support its position – five weeks after Plaintiff reached out regarding resolution – Plaintiff responded "[i]n the future, if your client has a claim of authenticity, the sooner you can get it over to us the better; we generally have a very quick turnaround…and it'll cause less of a disruption to your client." *Id.* at ¶ 16. This alone shows that Plaintiff is not acting in bad faith or unreasonably; just the opposite – it shows that Plaintiff wants to resolve these issues as quickly as possible and is not trying to harass Movant or any other defendant in these matters.

Plaintiff then prioritized the investigation into Movant's claims, and, even though Plaintiff was unable to confirm that the product in question was authentic – despite Movant's claims to the contrary – Movant's documentation alerted Plaintiff that Movant may be U.S.-based, and, therefore, generously and graciously decided to voluntarily dismiss the defendant. *Id.* at ¶ 17. Plaintiff did this for two reasons. First, Plaintiff's sole focus of this litigation was to identify large-scale, egregious counterfeiters, and based on the information provided by Movant, Plaintiff was satisfied that Movant may fall outside of this category. Second, judicial efficiency was best served if Plaintiff dismissed the Movant from this action without prejudice and brought a new action against the Movant separately, since, if the Movant was actually U.S.-based, Plaintiff would likely need to either sever the case or request that different remedies be applied to Movant than would be applied to the other Defendants. Movant argues that Plaintiff's "inability to offer even token resistance before voluntarily dismissing its claims" is somehow indicative of bad faith, but this is just patently false. Plaintiff's desire to resolve matters promptly is favorable; it is in the best interest of the parties, the Court, and the judicial process for it to do so. Plaintiff should not be punished for its awareness and respect for judicial efficiency.

At every turn, Plaintiff acted reasonably and in good faith. The only example of unreasonableness in this case is Movant's own conduct in prolonging resolution, avoiding Movant's communications

requesting to discuss resolution, misleading this Court by making misrepresentations and false assertions, and inflating the costs of litigation and damages incurred by its multiple failures and shortcomings.

Based on the foregoing, Movant is not entitled to attorney's fees, as it is not the prevailing party, this is not an "exceptional case," Plaintiff did not act in bad faith, Plaintiff did not act unreasonably, and Movant has not established any of these findings by a preponderance of the evidence (or any evidence whatsoever). As such, Plaintiff respectfully requests that this Court deny Movant's Motion.

## II. MOVANT HAS FAILED TO DEMONSTRATE THAT IT IS ENTITLED TO DAMAGES UNDER FEDERAL RULE OF CIVIL PROCEDURE 65(c)

### A. Movant Has Failed to Establish that it was Wrongfully Enjoined

"A party has been 'wrongfully enjoined' under Rule 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act." *Medafrica Line, S.P.A. v. American West African Freight Conf.*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987). In this case, whether Movant had the right to do the enjoined act is disputed; however, a determination based on the merits of the underlying claims as to Movant was not litigated or reached, as Movant was voluntarily dismissed from the lawsuit for different reasons – namely, for the sake of judicial efficiency. Movant has cited to *Smart Study*, a Southern District of New York case, in an attempt to establish that Movant was wrongfully enjoined; however, fairness dictates that this Court should not adopt that court's minority opinion. *Smart Study Co. v. Bichha123*, 20-cv-7889 (JSR) (S.D.N.Y. Dec. 7, 2020).

Contrary to Movant's blatantly false assertions riddled throughout its Memorandum, Plaintiff has at no point whatsoever conceded to the fact that Movant's products are authentic or licensed. See Carter Declaration at ¶ 17. Rather, Plaintiff maintains its position that Movant's products are likely counterfeit. *Id*. However, again, as a full determination based on the merits has not been reached, and as discovery was not yet conducted at the time Movant was dismissed from the suit, Plaintiff need not address these claims.

9

### B. Movant Has Failed to Identify any Damages it Has Sustained with Requisite Specificity

Assuming, for the sake of argument, that even if it were determined that Movant was wrongfully enjoined, the analysis then must turn to the question of damages. As a threshold matter, in order to recover damages, a claimant must demonstrate that damages occurred. *Intercapital Debt Trading v. Cantor Fitzgerald*, 1996 U.S. Dist. LEXIS 4483, *6. Even assuming the lowest standard of preponderance of the evidence, Movant's claim fails, as the claim, is predicated only upon imprecise, inaccurate, and intentionally deceptive statements, no factual information, and one declaration which is, at best, contradictory.

Movant may only recover damages that have been proximately caused by the injunction; and, then those damages may only be recovered up to the amount of the bond. *Id.* Movant's Motion for Damages fails immediately under the first requirement, that Movant must show that damages have been caused. *Id.* Movant did not submit a single piece of evidence to support its damages claim, not one: receipt, invoice, calculation, sales record, showing any damages – not even an estimate. Whether or not they were proximately caused, and the amount they are entitled to recover against the bond is remarkably hard to argue, given the absence of an actual record presented by Movant.

In addition to the requirement that a wrongfully enjoined defendant must establish *what* damages were proximately caused by the erroneously issued injunction in order to recover, "…the alleged damages cannot be speculative," and must be established definitely. *Id*. While Movant claims that they are entitled to damages for lost sales, they provide nothing from which they base this claim. A quantification of damages requires adequate – or, at an absolute minimum, some – documentation.

Movant cites to the *Smart Study* case to argue that it is entitled to damages as a "wrongfully enjoined" defendant; however, Movant does not address one of the issues the Court raised in that case – the fact that defendant's methods of calculating damages were too speculative or based on information absent from the record. *Smart Study Co.,* (S.D.N.Y. Dec. 7, 2020). For example, in that case, the Movant adopted

10

a revenue-based approach to calculating labor costs, which the Court found to be "too speculative and depends too much on information that was not provided to the Court in any documented fashion." The Movant in the present case has not provided any information to the Court, nor any documentation whatsoever from which either the Court or the Plaintiff can calculate damages.

The only supporting documentation to substantiate Movant's claims that damages were suffered is the single Declaration of Kristie Keller ("Keller Declaration"). The Keller Declaration claims: "lost sales of *all products* on amazon.com which averaged approximately XXXX thousand dollars per week prior to the imposition of the injunctions;" however, to Plaintiff's knowledge, Movant's Amazon store was not frozen, only one product listing was removed by Amazon. Carter Declaration at ¶ 7. Additionally, while damage amounts need not be proven mathematically, "XXXX thousand dollars" hardly meets the requirements of specificity required for this Court to enter a damages award. The Keller Declaration also requests damages due to "lost income from future sales on all platforms due to the inability to purchase inventory;" however, it is relevant to note that, in the asset freeze, a total of roughly five hundred dollars was frozen. *Id.* at ¶¶ 5-6. Finally, Movant claims damages for "approximately 60 hours of labor complying with the injunction by removing, then restoring the sales listings for the enjoined products;" however, again, Plaintiff must point out that, despite claiming an entire work week and a half of labor hours to relist products, based on a review of all of Movant's storefronts, no TMNT products have been found to be relisted. *Id*. at ¶ 23.

Movant has claimed "hundreds of thousands of dollars" in damages. However, apart from the sole Declaration, devoid of any specificity, no other documentation or evidence of damages and/or attorney's fees has been provided – either to the Court, or to Plaintiff's counsel, which has requested any sort of computation of damages numerous times – no computation of damages, no declarations, no invoices, no evidence, nothing whatsoever. In fact, in response to one of Plaintiff's numerous requests of Movant to provide a computation, Movant's counsel specifically stated: "And, while I may have told you I'd calculate

11

the damages, . . . I didn't waste my time." *Id.* at ¶ 22.

### C. Damages Are Limited to the Injunction Bond

Assuming, again, for the sake of argument, that the Court finds that Movant was wrongfully enjoined, adopts Movant's unsupported claims of damages, accepts their silent method of calculating damages, and awards to Movant an amount of damages not requested, such an award must be limited to recovery against the injunction bond.

The purpose of requiring security prior to issuance of a Temporary Restraining Order ("TRO") is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained. *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) (quoting 13 Moore's Federal Practice at 65-94.1 (1997). A party wrongfully enjoined is entitled to damages, up to the amount of the bond, as may be shown to have been proximately caused by the injunction. *See Blumenthal v. Merrill Lynch Inc.*, 910 F.2d 1049, 1055 (2d Cir. 1990) (citations omitted). District courts, however, retain discretion to deny recovery under an injunction bond. *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390 (7th Cir. 1983) (listing the factors to consider in assessing a claim on bond, including the failure to mitigate damages). Moreover, damages claimed under an injunction bond must arise from the operation of the injunction itself, not from damages occasioned by the suit independently of the injunction. *Lever Bros. Co. v. Int'l Chem. Workers Union*, 554 F.2d 115, 120 (4th Cir. 1976).

Finally, a restitutionary approach to damages calculations accords with the function of Rule 65(c) security. Rule 65(c) security can "be viewed as a contract in which the court and plaintiff 'agree' to the [security] amount as the 'price' of a wrongful injunction." *Continuum Co.*, 873 F.2d at 803 (citation omitted). In accordance with this function, courts have repeatedly held that, in the absence of bad faith on the plaintiff's part, "the [security] provides the plaintiff with notice of the maximum extent of its potential liability." *Nokia Corp.*, 645 F.3d at 557; *see also Blumenthal*, 910 F.2d at 1054; *Continuum Co.*, [*144] 873 F.2d at 803; *Coyne-Delany Co. v. Capital Dev. Bd. of the State of Ill.*, 717 F.2d 385, 393 (7th Cir.

12

1983); *Int'l Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945).

### D. Movant Failed to Mitigate its Damages

Movant cites *Triumph v. Ward*, No. 11 C 7927 (N.D. Ill. Dec. 22, 2011) in support of its request for damages; however, *Triumph* actually supports Plaintiff's position as to why damages should not be awarded. The Court in *Triumph* held that "the court should consider, among other factors, the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit…" *Id.*

Notably, Movant failed to mitigate its damages significantly. The TRO in this matter was effectuated by Amazon and PayPal on January 15, 2021. See Carter Declaration at ¶¶ 5-6. The amount restrained in Movant's Amazon account was $321.51, and in Movant's PayPal account was $209.79. *Id*. Movant reached out to Plaintiff's counsel on January 21, 2021, six days after the TRO had been effectuated. *Id.* at ¶ 8. Incredibly, Movant's counsel did not indicate in its initial e-mail, or at any point in time, that Movant was US-based. *Id* at ¶ 9. If it had provided documentation to that effect, Plaintiff would have issued a dismissal on the spot as is the policy of Plaintiff's counsel in these cases. *Id.* at ¶ 2. Movant's counsel is well-practiced with this type of litigation and should have known that alerting Plaintiff to this fact would have led to an immediate resolution. Movant further neglected to raise its claim that it was selling licensed and/or authentic products in its initial email, and failed to do so until five weeks later in an e-mail dated February 24, 2021. *Id.* at ¶ 10. Again, Movant's counsel is well-practiced and should have known that providing such documentation would lead to a prompt resolution. Had Movant not failed in this regard, Plaintiff would have dismissed Movant from this action, and Movant's accounts would have been promptly released, all within one week of the TRO being effectuated when only a total of $531.30 worth of funds were restrained. *Id.* at ¶¶ 5-6. Plaintiff's counsel reached out to Movant on numerous occasions between January and February in an attempt to move toward resolution with almost all of its e-mails going unanswered. *Id.* at ¶¶ 11, 13-14. One of Plaintiff's e-mails expressly stated, "Please provide your client's

response at your earliest convenience. We think we can get this one resolved promptly, but we need your cooperation to do so." Movant's counsel did not respond to Plaintiff's numerous communications until February 24, 2021. *Id.* at ¶¶ 13, 15. Within five days of reaching out, Plaintiff was able to dismiss and lift the restraints on Movant's accounts. *Id.* at ¶ 19.

Plaintiff is of the opinion that Movant's failure to provide this information, and failure to respond to Plaintiff's attempts at resolution, were a calculated scheme of Movant's counsel to prolong litigation for the express purpose of bringing a Motion for Damages against Plaintiff in an attempt to extort it out of hundreds of thousands of dollars. Movant's counsel had recently been successful in obtaining legal fees and damages in a similar case in the Southern District of New York (the only case it cites to in support of its position – *Smart Study*). Plaintiff believes Movant's counsel saw the Viacom name and instantly recognized the opportunity to try to obtain a windfall by strategizing to draw-out the litigation. This is supported by the following facts:

- Movant did not respond to Plaintiff's e-mails requesting to discuss resolution until February 24, 2021, five weeks after its initial e-mail to Plaintiff. Carter Declaration at ¶ 15.
- In its February 24, 2021 e-mail, Movant's counsel stated that "our client has already sustained significant material harm in the form of lost sales, legal fees and the expenditure of other resources… our client's damages are mounting…[and] we will have no choice but to seek sanctions, costs, and legal fees…" *Id.*
- After Movant was dismissed on March 1, 2021, Movant filed its Motion for Fees and Damages on March 18, 2021.
- On March 25, 2021, Movant e-mailed Plaintiff claiming his client lost "two hundred thousand dollars in sales and another two hundred thousand in future profits on Amazon and Walmart alone…[and] over twenty thousand in legal fees…" *Id.* at ¶ 21.

Again, it needs to be emphasized that the restraint on Movant's accounts was originally $531.30 and the total restraint was only for a period of 45 days. *Id.* at ¶¶ 5-6, 19. Additionally, Amazon only suspends the product listing at issue while allowing the rest of the store to remain active. *Id.* at ¶ 7. Aside from the PayPal account restraint, the TRO in no way affected Movant's other websites or storefronts. *Id.* At worst, Movant is openly extorting the Plaintiff. At best, Movant is being wildly unreasonable in its assessment of

14

damages. Which one, we may never know, as Movant has failed to provide any sort of computation of damages despite Plaintiff's repeated efforts to obtain such a calculation so that it could adequately respond to this Motion. *Id.* at ¶ 22. Plaintiff has acted promptly and with sensitivity to Movant and Movant's business, and should not be punished for the failure of Movant's counsel to mitigate its client's damages.

### E.	Movant is Not Entitled to Damages under Fed. R. Civ. P. 65(c)

Where relief is sought against security furnished pursuant to Fed. R. Civ. P. 65(c), the decision whether to award damages, and the extent thereof, is in the discretion of the district court and is based upon considerations of equity and justice. Often, a denial of relief on such grounds may be appropriate; this is clearly one of those situations. Here, because Movant was not wrongfully enjoined by the TRO, has failed to proffer any documentary evidence whatsoever establishing the "hundreds of thousands" it claims to have incurred as damages proximately caused by the entrance of the TRO, its Motion should be denied.

### III.	CONCLUSION

For the reasons set forth above, and in the interest of fairness and justice, Plaintiff respectfully requests that this Court deny Movant's Motion in its entirety.

Dated: April 14, 2021

Respectfully submitted,

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan
Alison Carter
AM Sullivan Law, LLC
1440 W. Taylor St., Suite 515
Chicago, Illinois 60607
Telephone: 224-258-9378
E-mail: ams@amsullivanlaw.com

***ATTORNEYS FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan