```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

| | |
|---|---|
| **VIACOM INTERNATIONAL INC.,** | |
| Plaintiff, | |
| v. | Case No. 20 C 7418 |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,** | Judge Harry D. Leinenweber |
| Defendants. | |

# ORDER

Defendant Kreative Kidz's Motion for Attorney's Fees is denied. Defendant Kreative Kidz's Motion for Compensatory Damages is granted.

# STATEMENT

On December 15, 2020, Plaintiff Viacom brought suit to protect its trademarks related to Teenage Mutant Ninja Turtles ("TMNT"). In doing so, it asked the Court for a Temporary Restraining Order ("TRO") on all Defendants. (Dkt. No. 7.)

The Court is authorized under limited circumstances to bring a Temporary Restraining Order without written or oral notice to an adverse party or its attorney. The moving party must provide:

> (A) specific facts in an affidavit or a verified complaint clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;

>>(B) the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). Viacom filed its Complaint alleging violations of the Langham Act on December 15, 2020 and moved for a TRO the following day. (Dkt. Nos. 1, 6, 7.) In support of its Motion, Viacom alleged that (1) the TMNT trademarks were distinct enough to be worthy of protection; (2) Defendants were not authorized to use the trademark; and (3) a likelihood of confusion exhibits as to the origin or the sponsorship of Defendants' products.

Viacom provided the following factual support for each element. First, the TMNT trademarks were registered at the United States Patent and Trademark Office, which constitutes *prima facie* evidence of their validity. Second, Viacom proved that Defendants were not authorized to sell TMNT products through an affidavit of Paul Varley, who explained his general methods of identifying foreign individuals and companies who were offering counterfeit products and claiming the products "were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated." (Varley Decl. ¶ 13, Dkt. No. 8-1.) Finally, Viacom claimed that Defendants used an image that was identical in appearance to the trademark images and used advertising methods to suggest to the public that the origin of the product was the trademark owner and provided approximately 450 pages of screenshots of the infringing online stores to demonstrate the similarities. (Dkt. Nos. 9-4, 9-5.)

Viacom further argued it was not required to provide advance notice to Defendants because the companies were foreign and held

most of their assets in overseas accounts. Immediate and *ex parte* restraint was required to prevent Defendants transferring assets to overseas accounts, beyond the reach of the Court's orders.

On December 22, 2020, the Court held a telephonic motion hearing and granted Viacom's Motion. (Dkt. No. 13.) However, the TRO did not immediately take effect. On December 30, 2020, Viacom motioned for an extension of time to allow Amazon and PayPal to implement the TRO (Dkt. No. 14), which the Court granted. (Dkt. No. 16.) The Court then granted a preliminary injunction on January 19, 2021. (Dkt. No. 22.) On February 15, 2021, Defendant Kreative Kidz filed its Answer and Counterclaim. (Dkt. No. 24.) On March 1, 2021, Viacom voluntarily dismissed, *inter alia,* Defendant Kreative Kidz LLC. (Dkt. No. 28.)

Kreative Kidz now brings a Motion for Attorney's Fees and Compensatory Damages. (Dkt. No. 29.) In the affidavit attached to the Motion, Kreative Kidz swears it has been a lawful third-party seller of trademarked TMNT products for almost twenty years. (Keller Decl. ¶¶ 3—6, Dkt. No. 30-3.) Kreative Kidz consists of a sole member that resides in the United States and provides accurate contact information available at its online Amazon storefront, as well as having a corporate registration information available on the New York Department of State's website. (*Id.* ¶ 7.) Kreative Kidz further swears that it was never contacted by Viacom prior to filing suit, but that, as soon as the injunction went into effect and its assets were frozen, Kreative Kidz's sole member immediately attempted to contact Plaintiff's counsel and left multiple voicemails, none of which were returned. (*Id.* ¶ 10.)

Kreative Kidz asks for the following damages. First, compensation for the seven weeks in which its Amazon account was

frozen. During those weeks, Kreative Kidz swears it would have made an average of $15,000 in sales revenue per week. Second, Kreative Kidz requests $200,000 in lost profits due to its inability to access the money and reinvest it in inventory that would have been sold on all of its online platforms. Third, Kreative Kidz asks for recompense for the sixty hours of work done to comply with the injunction and adapt its effects on its business. Finally, Kreative Kidz requests $10,000 in legal fees relating to the injunction and $10,000 in legal fees unrelated to the injunction.

In response, Viacom put forth the following additional facts. The TRO was effectuated by Amazon and PayPal, Inc. on January 15, 2021. (Carter Decl. ¶¶ 5–6, Dkt. No. 44.) The initial amount restrained in Kreative Kidz's Amazon account was $321.51 and the initial amount restrained in its PayPal Account was $209.79. (*Id.*) Kreative Kidz reached out to Viacom's counsel on January 21, 2021. (*Id.* ¶ 8.) Kreative Kidz did not mention that it was US-based at that time or provide the defense that it was selling authentic products. (*Id.* ¶ 9.) Viacom's counsel attempted to reach Kreative Kidz after the initial email with no response. (*Id.* ¶ 11, 13–14.) When Kreative Kidz provided the requested information via email on February 24, 2021, Viacom dismissed five days later. (*Id.* ¶¶ 13–19.)

To support the reasonableness of its position in requesting the TRO, Viacom filed a second affidavit of Paul Varley ("Varley"). (Second Varley Decl., Dkt. No. 43.) Varley swore that he, or someone working under him, analyzed "kreativekidsbedding" and that:

> a) the design on the bedding does not match any officially licensed bedding that we could identify; b) the Nickelodeon branding does not appear on the

> bedding although TMNT is a Nickelodeon brand (which is a subsidiary of Viacom); c) its use of digitally augmented images of the various branded products; and, d) the high volume of products for sale; all taken together are very strong indicators of a foreign-based infringer.

(*Id.* ¶ 6.) Varley additionally swore that the TMNT product sold by kreativekidsbedding was not widely available, that the company did not provide "any contact information on its Amazon storefront at the time of the investigation," and that Amazon's rules requiring sellers to include their location, initiated September 1, 2020, was not relevant as the company used Amazon's fulfillment centers masked the company's location. (*Id.* ¶¶ 7–9.) Varley then identified websites that sold "Kreative Kids Bedding" product and those websites were hosted in China. (*Id.* ¶¶ 11–13.) Varley also alleged that Defendant Kreative Kidz's website made it impossible to determine its location as it used "drop-shipping style of product order fulfillment." (*Id.* ¶ 15.) Finally, Varley alleged he was "not informed, or otherwise made aware, that Amazon's policy had changed as of September 1, 2020, to require that all sellers disclose their location. Because we had no knowledge of this policy, we had no reason to believe Movant's location would be available after that date." (*Id.* ¶ 19.)

Kreative Kidz replied with its own additional information via affidavit. In it, Kreative Kidz stated that it has never used Amazon's fulfillment store or engaged in "drop-shipping." As a result, a simple test order from its website would have revealed that it was an American product shipped directly by Kreative Kidz. An American company immediately negates the need for a temporary restraining order of assets, as there are no concerns about enforcing court orders in New York. Additionally,

Kreative Kidz noted that Viacom's own exhibit where it states that the product "ships from and is sold by Kreativekidsbedding," and is not "fulfilled by Amazon." (Amazon Screenshot, Varley Decl., Ex. 1, Dkt. No. 43-1.) As a result, the statements in the affidavit claiming that Kreative Kidz employs drop-shipping or fulfillment stores are indisputably false.

Kreative Kidz also disputed the factual allegations that there were "digitally altered images" on Amazon or that their products lacked Nickelodeon branding. Finally, Kreative Kidz expressed skepticism that Varley was a private investigator specifically hired to find counterfeit products but was not aware of Amazon's highly publicized decision to require identifying information for all third-party sellers beginning September 1, 2020, three and a half months before this suit was filed. (Compiled News Articles, Reply, Ex. C, Dkt. No. 47-3.)

Under the Langham Act, the Court may, in exceptional cases, award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a). A case is exceptional when it "stands out from others with respect to the substantive strength of the of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Court has broad discretion in determining what is exceptional. *Id*.

Viacom first argues that Kreative Kidz is not a prevailing party, and thus ineligible to receive attorney's fees or other costs. A "prevailing party" is a legal term of art that signifies the party has been granted some relief by the court. *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 474 (7th Cir. 2003) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of*

- 6 -

*Health & Hum. Res.*, 532 U.S. 598, 603 (2001)). Past examples include a judgment on the merits and a consent decree. *Id*.

Kreative Kidz was dismissed without prejudice. As a result, the Court has not provided Kreative Kidz with any legal relief. While Kreative Kidz claims that Viacom admitted that Kreative Kidz bedding was not counterfeit, Viacom claims it may pursue further litigation outside of the current lawsuit. Because Viacom currently retains the right to sue, Kreative Kidz is not eligible to receive attorney's fees.

Kreative Kidz also moves for compensatory damages for being wrongfully enjoined. The Seventh Circuit reviewed the standard for compensatory damages on a preliminary injunction in *Coyne-Delany Co., Inc. v. Capital Development Board of State of Illinois*, 717 F.2d 385 (7th Cir. 1983). Generally, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Id.* at 391.

Viacom admits in its briefing that it wrongfully enjoined Kreative Kidz by filling an affidavit swearing the company was foreign when it was, in fact, registered in the State of New York. Viacom argues, however, that it was reasonable for Viacom to mistake Kreative Kidz as a foreign entity because there are websites, hosted in China, that also uses the moniker "Kreative Kids" or "Kreative Kidz."

This argument is unpersuasive. Viacom is undoubtably aware that Chinese companies tend to copy successful American selling strategies and trademarks. That is the basis for this case. Therefore, Viacom cannot use unrelated Chinese websites to assume all Kreative Kidz are the same and thus Kreative Kidz can be assumed to be foreign. Further, Kreative Kidz's Amazon website

has shown that it was U.S. based since September 1, 2020. Viacom had sufficient opportunity to rectify its mistaken impression and did not do so prior to filing suit.

Viacom also argues that Kreative Kidz's responses were not fast enough, and that this is evidence that Defendant's counsel was working in bad faith. The Court finds that Kreative Kidz filed its an Answer exactly one month after it received notice of the TRO. While not exactly speedy, it appears to be within a normal range of case response times and does not merit requiring Kreative Kidz to forgo all compensation for wrongful enjoinment.

The Court has one further concern. "The right to a preliminary injunction depends on a comparison of the likely harms to the parties." *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1392 (7th Cir. 1992). In order for the Court to make a TRO determination, it must be able to trust that the affidavits presented before it consists of factually accurate information. This is a foundational component of a fair and impartial judicial system. Here, Viacom's follow-up affidavit contained false information regarding Defendant Kreative Kidz. Specifically, Viacom's affidavit alleged that Kreative Kidz engaged in drop-shipping and Amazon fulfillment such that it was "impossible" to know if Kreative Kidz was a U.S.-based company. (Varley Decl. ¶ 15.) However, the screenshot in the exhibit provided by Viacom clearly shows that Kreative Kidz ships products directly. This fact, combined with the clear information available on its website that the company was U.S. based, is sufficient to merit compulsory damages.

Finally, Viacom argues that Kreative Kidz should be limited to the approximately $500 initially frozen in Kreative Kidz's accounts instead of receiving the fully $10,000 bond. However,

Viacom discounts the difficulty of running a business with frozen accounts. While Amazon and PayPal accounts are frozen, Kreative Kidz could not withdraw any money. Viacom also discounts the sixty hours of work Kreative Kidz engaged in to work around the injunction while running its business. The Court therefore finds the full bond amount appropriate compensation in this case.

    The Court grants Kreative Kidz Motion for Compensatory Damages and orders Plaintiff Viacom to pay Defendant Kreative Kidz the $10,000 bond.

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Dated: 3/11/2022